IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 4:19CR00116-001 BSM |
| ANDREW SCOTT PIERSON | ) | |
| | ) | |

## SENTENCING MEMORANDUM AND
## MOTION FOR UPWARD DEPARTURE AND VARIANCE

The United States of America, by and through Jonathan D. Ross, United States Attorney

for the Eastern District of Arkansas, and Anne E. Gardner, Assistant United States Attorney,

respectfully submits this sentencing memorandum for the Court's consideration.  For the reasons

set forth below, the United States respectfully requests that the Court sentence ANDREW SCOTT

PIERSON (PIERSON) to twenty years' imprisonment on Count 2.

### I.     BACKGROUND

On November 9, 2021, PIERSON pleaded guilty to Count 2 of the Fourth Superseding

Indictment charging him with Conspiracy to Violate the Arms Export Control Act, in violation of

22 U.S.C. § 2778, 22 C.F.R. §§ 121.1 and 123.17.  The Presentence Investigation Report (PSR

2nd draft, revised on February 11, 2022), calculates PIERSON's total offense level as 28 and his

criminal history category as III.  With the reduction of the third point for timely acceptance of

responsibility, the advisory Guidelines range is 70 to 87 months' imprisonment. The statutory

maximum sentence for Count 2 is twenty years.  Pursuant to Paragraph 5D of the Plea Agreement

(docket no. 267), the parties agreed to litigate any Guidelines enhancements or reductions except

the application of leadership role. The Plea Agreement does not restrict either party from seeking

a variance from the recommended Guidelines range pursuant to 18 U.S.S.G. § 3553(a).

1

## II.    ISSUE

The United States seeks an upward departure under Guidelines Section 2M5.2 due to the excessive nature in which PIERSON committed the offense.

In his objections to the PSR, PIERSON argues that he only repaired firearms for CDN and CJNG, and that he did not manufacture firearms for any cartel. PIERSON also denies manufacturing any AR or AK-type firearms or that he was responsible for any grenade launchers and .50 caliber firearms. The United States asserts that Internet transactions, receipts, communications, parts and equipment seized from PIERSON's home in Mexico, and witness testimony show that he manufactured AR- and AK-type automatic weapons, and that he provided ammunition and other military equipment for use by CDN over a significant period of time.

## III.    WITNESS TESTIMONY

The recommended sentence is contested. The United States will call witnesses and present proof, and it estimates that it will need one hour for testimony in addition to any time requested by the defense.

## IV.    BACKGROUND

In or around June 2014, ATF Special Agents assigned to the Tulsa, Oklahoma Field Office discovered that PIERSON made 221 purchases from an on-line website that included machinegun parts, AR-15/M-16 Drilling Jig Fixtures, and AR-15 80% lower receivers.  PIERSON had these items shipped to his mother, Betty Kendall, in Jay, Oklahoma, who in turn shipped them to co-defendant Maria ALMENDAREZ (M. ALMENDAREZ) at 1208 Paseo De Danubio Road, Laredo, Texas 78046.

In November 2014, PIERSON was indicted for violations of Title 18 United States Code, Section 922(g)(1), and the United States District Court for the Northern District of Oklahoma issued a warrant for his arrest. PIERSON became a fugitive from justice beginning in November 2014 and continuing until December 10, 2018.

On or about August 1, 2017, United States Postal Inspection Service (USPIS) and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents were alerted to a shipment of counterfeit Colt AR-15 80% lowers that had arrived in the Eastern District of Arkansas. The counterfeit Colt lowers had been purchased on the Internet by PIERSON and were shipped from California to a business in Pine Bluff, Arkansas that applies "cerakote" coating to firearms. PIERSON directed the Arkansas business to cerakote the 80% lowers and ship them to an address in Laredo, Texas linked to M. ALMENDAREZ. Further financial investigation revealed that PIERSON used the Internet to order hundreds of firearm parts, firearm manufacturing equipment, helmets, and other paramilitary gear that was smuggled across the Mexican border and delivered to PIERSON in Nuevo Laredo, Mexico.

PIERSON had been living in Nuevo Laredo, Mexico since fleeing his federal arrest warrant in 2014. PIERSON worked for "Cartel Del Noreste" (CDN) repairing firearms for the cartel, as well and producing unmarked and counterfeit AR-15 type automatic weapons. The weapons were manufactured from partially cut AR-15 lower receivers (80% lower receivers) that PIERSON ordered on the Internet and smuggled across the United States' border into Nuevo Laredo, Mexico. PIERSON used a milling machine to finish cutting the AR-15 lower receivers and assembled them into functioning automatic weapons. PIERSON's order of 80% lower receivers bearing counterfeit Colt trademarks in May 2017 was significant. Colt firearms are "status symbols," and highly prized by Mexican drug organizations. In Mexico, Colt firearms are issued exclusively to Mexican armed

3

forces and federal law enforcement units. In addition, name brand American firearms are known to function more reliably than counterfeit weapons. Accordingly, weapons bearing Colt trademarks are sought after by criminal organizations.

During a search of PIERSON's residence, Mexican Police photographed and seized numerous parts and equipment showing that PIERSON was manufacturing AR-type weapons. For example, ATF Attachés obtained photographs of jigs whose only purpose is to align the proper placement of holes cut into AR lower receivers in PIERSON's residence. They also found "Polymer80" devices mixed with these jigs used to complete unfinished handgun frames.



Jigs and Polymer80 devices

ATF Attachés obtained photographs of a "Grizzly Industrial Model G0704" milling machine located in PIERSON's residence. This machine is used to make parts for firearms, and for finishing AR 80% lower receivers into functioning firearms. The label on this machine indicates it was manufactured in "06 13." Investigators found the record of an online discussion dated October 30, 2013, on PIERSON'S laptop computer, which read, "You helped me make a decision on the size collets I want for my g0704." Investigators also found an e-mail message and order #8074 dated November 20, 2018, from "Ghost Gunner" and billed to co-defendant Abe CALDERON at 1950 S. Westcliff Road, Odessa, Texas 79763. The order included various size

4

collets, a 5/32 inch drill, and AR-15 Jig Bolts. The confirmation indicates order shipped to co-defendant Alejandro QUIROZ at 313 W. Elm Street, Laredo, Texas, 78040.

 

"Grizzly Industrial Model G0704" milling machine.

ATF Attachés obtained photos showing a "ChinaCNCzone" router from PIERSON's residence which, when connected to a computer, is used to cut metal, including AR/AK rifle receivers. Investigators located a user manual, software installation and tutorials for this machine downloaded on PIERSON's laptop computer.



"ChinaCNCzone" router.

ATF Attachés obtained numerous photographs of AR-type rifle lower receivers, including photos showing three unfinished AR lower receivers in several stages of completion, each one increasing the area that the fire control mechanism is "milled" out of the receiver.



AR-type rifle "milled out" lower receivers.

ATF Attachés obtained photographs of numerous parts used in AR/AK-type rifles which can be folded into to place by hydraulic press machines that were located with other equipment.



Parts used in AR/AK-type rifles.

ATF Attachés obtained photos and PIERSON's Internet communications regarding M203-type grenade launch tubes, as well as side plates for machine guns. ATF Attachés also obtained photos of .50 caliber ammunition and components used to make large quantities of other caliber ammunition taken from PIERSON's residence.

6





M203 grenade launch tubes                    383 Runner machine gun plates









Ammunition components                         .50 caliber ammunition

Order forms obtained from United States parts and equipment suppliers confirm that PIERSON ordered at least 179 80% AR-type lower receivers. Order forms and Internet communications confirm that in November 2018, PIERSON ordered and paid for two Ghost Gunner-2 CNC machines, which are used specifically to cut AR 80% lower receivers into

functioning firearm receivers. Order forms show that PIERSON ordered 'parts kits' used to assemble or repair firearms, including parts kits for fully automatic weapons. Finally, in addition to firearm components, ammunition, and machinery, PIERSON ordered tactical ballistic helmets and body armor, as well as high-capacity magazines, such as 90 round drum magazines, that were designed to arm CDN fighters.

In addition to manufacturing and repairing firearms for CDN, PIERSON was involved in other cartel operations, including trafficking weapons from the United States. In 2016, PIERSON moved his elderly mother, Betty Kendall, from Oklahoma to Nuevo Laredo, Mexico where she was housed in a residential neighborhood. Kendall lived under the watch of the cartels and was allowed to move about Nuevo Laredo only with cartel supervision. Kendall knew that PIERSON was making and providing weapons to the cartels, because PIERSON had told her as much. In 2018, PIERSON told Kendall that she would be moved to a larger residence where, as a 'respectable white woman', she would act as "cover" for CDN's store of trafficked firearms, ammunition, rockets and hand grenades. After an injury in 2018, Kendall, fled PIERSON and the Cartel in Mexico to seek medical treatment in the United States and did not return.

## V.    APPLICABLE LAW AND ARGUMENT

### 1.  Departure from the Sentencing Guidelines Range

The defendant agreed to a base offense level 26 under Guidelines Section 2M5.2(a)(1). The defendant agreed to a two level enhancement for the aggravating factor of being a leader or organizer in the offense under Guidelines Section 3B1.1(c). Guidelines Section 2M5.2(a)(1) "assumes that the offense conduct was harmful or had the potential to be harmful to a security interest or foreign policy interest of the United States." 2M5.2 Application Note 1. "In the case of a violation during a time of war or armed conflict, an upward departure may be warranted." *Id.*

8

Additionally, where the volume of commerce involved, the extent of planning, and multiple occurrences are presented in an extreme form, a departure from the guidelines may be warranted. *Id.* Application Note 2.

The United States submits that PIERSON's conduct was harmful to the security and the foreign policy interests of the United States. PIERSON armed Mexican drug cartels over several years with hundreds of weapons, bulk ammunition, and combat gear. PIERSON had an active and ongoing conspiracy with the cartels. During the time of PIERSON's conspiracy, the Mexican government was at war with cartels, and extreme violence against law enforcement and civilians was prevalent in communities. Therefore, given the volume of commerce involved, the extent of planning and multiple occurrences of the conduct, PIERSON's case is the extreme form of conduct that qualifies for an upward departure under Guidelines section 2M5.2.

Guidelines section 5K2.4 provides for an upward departure where a person was abducted, taken hostage, or unlawfully restrained to facilitate the commission of the offense. In this case, PIERSON brought his 77 year-old mother to Nuevo Laredo for the purpose of using her to assist CDN in its firearm and weapons trafficking organization. Kendall was under the control of CDN at all times and was not living freely in Nuevo Laredo. In 2018, Kendall was so desperate to leave that she used a shoulder injury to request permission from CDN to seek medical treatment in the United States. Kendall was allowed to cross the border into the United States with only the clothes on her back, and she did not return to Mexico following her treatment.

Therefore, under Guidelines section 2M5.2 and section 5K, the United States requests an upward departure from the calculated Guidelines range to a sentence of 240 months imprisonment.

2. <u>Sentencing under Title 18, United States Code, Section 3553(a)(1), (a)(2) and (b)(1)</u>

During sentencing, the Court may consider all relevant information including relevant conduct to the offense, and although not bound by the Sentencing Guidelines, the Court will consult the recommended Guidelines range as part of the sentencing process. In addition, the Court will take into consideration the sentencing factors set forth in Title 18, United States Code, Section 3553(a)(1)-(7). *See, United States v. Gall*, 552 U.S. 38, 49 (2007).

Title 18, United States Code, Section 3553(a)(2) provides the need for the sentence imposed:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To provide adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Title 18, United States Code, Section 3553(b)(1) instructs that the "court shall impose a sentence of the kind, and within the [Guidelines'] range, unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 3553(b)(1) (2020).

Title 18, United States Code, Section 3553(a)(1) provides that the Court "shall consider – the nature and circumstances of the offense and the characteristics of the offender." The February 2021 United States Government Accountability Office (GAO) report to Congress noted that, "[t]he illegal flow of firearms from the United States to Transnational Criminal Organizations in Mexico contributes to suffering on both sides of the border and is a longstanding concern. Because of the

violence and death associated with these organizations' illicit drug activities, the U.S. government has identified Transnational Criminal Organizations in Mexico as a threat to U.S. national security."[1] Mexico has just one gun store and issues fewer than 50 gun permits a year.[2] The Mexican government estimates that more than half a million guns are smuggled into Mexico from the United States each year, and the cartels are using other on-line sources, such as eBay, to arm themselves with military gear.[3] It is well known that the cartels use firearms, ammunition, and explosives to protect their drug trafficking routes, drug processing locations, and illicit profits.[4] In March 2018, a cartel ambush of Mexican security units occurred in three locations in Nuevo Laredo, using at least 15 vehicles with improvised armor and a .50 caliber gun capable of piercing the Mexican security unit's armored vehicles.[5]

PIERSON aligned himself with "Cartel Del Noreste" (CDN), the most violent transnational drug trafficking organization in Nuevo Laredo, Mexico. PIERSON became a source from which CDN obtained weapons used to terrorize and murder civilians and law enforcement alike. PIERSON, alone, is responsible for placing hundreds of weapons, whether refurbished, repaired, or newly made, into the hands of cartel members who used them to facilitate drug trafficking and other violence. In addition to firearms, PIERSON obtained military gear, including tactical ballistic helmets and body armor for CDN through on-line sources. In his own statement, PIERSON admitted to not only working for CDN, but meeting the leader of "Cartel Jalisco Nueva Generacion" (CJNG) and fixing automatic weapons for him. Between 2015 and 2021, authorities

---

[1] GAO-21-322 Firearms Trafficking, page 36.
[2] Where do Mexican drug cartels get their guns? Often the United States, Louisville Courier Journal, Aug. 25, 2021.
[3] Where do Mexican drug cartels get their guns? Often the United States, Louisville Courier Journal, Aug. 25, 2021; How Mexico's Most Powerful Cartel used EBay to Arm Themselves With Military Gear, Vice World News, April 5, 2021.
[4] GAO-21-322 Firearms Trafficking, page 4.
[5] GAO-21-322 Firearms Trafficking, page 4.

in Mexico registered more than 138,700 homicides committed with firearms.[6] PIERSON has blood on his hands, and his work supplying operational automatic weapons for CDN and CJNG is the most serious offense imaginable, next to committing murder himself. An upward variance is justified because PIERSON's exportation of gun parts and manufacturing equipment had extreme consequences above what is considered under the Arms Export Control Act sentencing guideline. *See, United States v. Fiorito*, 640 F.3d 338, 352 (8th Cir. 2011) (affirming upward variance from 188-235 months to 270 months; district court may vary upward based on facts already included in the advisory sentencing guidelines "where the advisory guidelines do not fully account for those facts").

PIERSON is not a first-time offender. PIERSON has a prior federal conviction for ketamine trafficking with Mexico, as well as theft, and he has served several years' incarceration for these convictions. PIERSON absconded from the federal judicial system in 2001 and absconded from federal process in 2014. Beginning in 2014, PIERSON made a life for himself as a fugitive in Mexico by using false on-line identities to obtain firearm parts and manufacturing equipment. PIERSON obtained a fraudulent Mexican birth certificate as part of his scheme to evade justice in the United States and to pose as a Mexican Citizen.

The crime of Conspiracy to Violate the Arms Export Control Act is the means by which the United States can charge individuals like PIERSON who obtain and export prohibited defense articles that facilitate violence and drug trafficking in other countries. "Shipping some gun parts" does not sound like a serious crime. However, when followed to its conclusion, PIERSON's intentional and deliberate conduct resulted in significant real-world costs to the citizens of Nuevo Laredo and other parts of Mexico, and ultimately to the citizens of the United States.

---

[6] Op-Ed: For Mexico, taking a stand against gun trafficking is a moral imperative, Los Angeles Times, Jan. 24, 2022.

PIERSON has shown little remorse for his conduct and has sought to minimize his participation by characterizing himself as a victim of the cartels, forced to "fix" some broken guns for CDN and CJNG. However, PIERSON fled to Mexico as a fugitive in 2014 by his own choosing. PIERSON made a way of life for himself by peddling his firearms expertise and becoming an invaluable resource to the cartels.

PIERSON was released from his prior federal sentence as a felon in March 2012, and by October 2013, he was seeking out a machine to assist him in building firearms. Additionally, as part of the current offense, PIERSON assumed false identities and committed fraud. Citizens in the United States and Mexico need to be protected from future crimes of PIERSON.

PIERSON listed several health issues in the PSR and indicated that he is receiving his medications and receiving adequate care in United States Marshals' custody. PIERSON's health needs can be met by placing him in a Bureau of Prisons medical facility, if he requests.

Finally, an upward variance is necessary to adequately deter others from engaging in this criminal conduct. The need for a sentence to afford adequate deterrence is a proper consideration under § 3553(a)(2)(B), as is the need for specific deterrence under § 3553(a)(2)(C). *See, e.g., United States v. Johnson*, 916 F.3d 701, 702 (8th Cir. 2019) (affirming upward variance to 204 months' imprisonment from a range of 57 to 71 months, holding that "the district court's attention to the need for specific deterrence in this case was neither impermissible nor inflexible.").

Therefore, the United States submits that the seriousness of PIERSON's offense, PIERSON's history, and the need to provide just punishment and deter others from engaging in similar conduct warrants a sentence at the statutory maximum of twenty years' incarceration.

13

## VI.    CONCLUSION

WHEREFORE, for the reasons and authority set forth above, the United States respectfully requests a period of incarceration of twenty years to account for the seriousness of PIERSON's offense against the citizens of the United States and the citizens of Mexico.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney

ANNE E. GARDNER
No. VA 41461
Assistant United States Attorney
Post Office Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
Anne.Gardner2@usdoj.gov