```
                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
                          CENTRAL DIVISION

UNITED STATES OF AMERICA

         Plaintiff

   Vs.                                  No.   4:19-CR-116-BSM
                                        November 9, 2021
                                        Little Rock, Arkansas
ANDREW SCOTT PIERSON                    12:15 p.m.

         Defendant


                    TRANSCRIPT OF GUILTY PLEA

              BEFORE THE HONORABLE BRIAN S. MILLER

                   UNITED STATES DISTRICT JUDGE



APPEARANCES:

On Behalf of the Plaintiffs:

     ANNE E. GARDNER
     U.S. Attorney's Office
     Eastern District of Arkansas
     P.O. Box 1229
     Little Rock, Arkansas 72203

On Behalf of the Defendants:

     MARGARET DIANE DEPPER
     Fuqua Campbell P.A.
     3700 Cantrell Road, Suite 205
     Little Rock, Arkansas 72202



   Proceedings reported by machine stenography and
displayed in realtime; transcript prepared utilizing
computer-aided transcription.
```

Valarie D. Flora, FCRR, TX-CSR, AR-CCR
United States Court Reporter
Valarie_Flora@ared.uscourts.gov (501) 604-5105

1              THE COURT:  We have United States of America
2  versus Andrew Pierson.  The case number is 19-CR-116.
3  Mr. Pierson is in the courtroom with his lawyer, Annie
4  Depper.  The United States is being represented by Anne
5  Gardner.
6        Mr. Pierson, raise your right hand and I'll swear you
7  in.
8        (The witness was sworn.)
9              THE DEFENDANT:  I do.
10             THE COURT:  Okay.  And Mr. Pierson let me get a
11 little background information from you.  How old are you?
12             THE DEFENDANT: 47.
13             THE COURT:  And how much education do you have?
14             THE DEFENDANT:  High school.
15             THE COURT:  Have you had any drugs, alcohol, or
16 any medication today that would -- or in the last 24 hours
17 that would make it difficult for you understand what we're
18 doing?
19             THE DEFENDANT:  No.
20             THE COURT:  And do you understand why you're in
21 the courtroom this afternoon?
22             THE DEFENDANT: Yes.
23             THE COURT:  You're being represented by Ms.
24 Depper.  Are you satisfied with the legal representation
25 she has given you so far?

1       THE DEFENDANT:  Yes.
2       THE COURT:  And Ms. Depper, have you had a
3  chance to talk to Mr. Pierson today?
4       MS. DEPPER:  I have, Your Honor.
5       THE COURT:  Are you -- is there anything about
6  Mr. Pierson that would lead you to believe that he is not
7  competent to go forward with the plea?
8       MS. DEPPER:  No, Your Honor.
9       THE COURT:  I find the defendant Andrew Pierson
10 competent to go forward with the plea.
11     Mr. Pierson, I remember you came in for a hearing.
12 We had a suppression hearing in your case.  I think at
13 that point that the case was positioned to go to trial.
14 It's my understanding that now you want to withdraw your
15 previous plea of not guilty and enter a plea of guilty
16 Count 2 -- well, this is the Fourth Superseding
17 Indictment.
18     Is that true?
19     THE DEFENDANT:  True.
20     THE COURT:  And when was this case set for
21 trial?  Do you know the date?  So it's set for next week.
22     You understand, Mr. Pierson, that you're not required
23 to enter a plea of guilty and that you have a right to go
24 forward with your trial next week?
25     THE DEFENDANT:  I understand.

THE COURT: Okay. Now, I'm going to go through -- I'm going to read the highlights of this Fourth Superseding Indictment Count 2 because that's what you're entering a plea of guilty to. I'm not going to go through every detail because it is a number of pages. Then I'm going to go through your rights with you. And I go through those rights with you, Mr. Pierson, so I can have a record that you understand what your rights are and what you're giving up by entering a plea of guilty.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: With regard to the Fourth Superseding Indictment, if we turn to Page 6, Paragraph 14 it say, beginning in or about 2014 until on or about December 20, 2018, in the Eastern District of Arkansas -- and it lists Andrew Scott Pierson and another person. And I'll be very honest with you, it's Ivan Quiroga maybe -- did knowingly and unlawfully conspire and agree -- and then lists several other people. And then it says, and other persons known and unknown to the grand jury to export and cause the exportation of firearms, ammunition, parts, accessories, attachments, and associated equipment, including, but not limited to, 80 percent complete AR-15-type firearm lower receivers, AR-15, 16 and M-4 -- well, AR-15, M-16, and M-4 bolt carrier groups, and AR-15,

1  M-16 and M-4 upper receivers, which were designated
2  defense articles under Category I of the USML, from the
3  United States to Mexico without having first registered
4  with and obtained the required license and authorization
5  from the Department of State, Department of Defense, Trade
6  Controls, and to attempt to do so in violation of United
7  States law.
8      Then it lists out the overt acts.  And I'm not going
9  to go through those, but it says, in furtherance of the
10 above conspiracy and to the effect -- to effect the
11 objects thereof the following overt acts, among others,
12 were committed by the conspirators in the Eastern District
13 of Arkansas and elsewhere.  Then it lists out three pages
14 and 28 overt acts.  I'm not going to go through all of
15 those.
16     Is that what you want to enter a plea of guilty to?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Now, like I said, you understand
19 that you're not required to enter a plea of guilty and you
20 understand that, if you were to stand on your plea of not
21 guilty, you would have a right to a speedy and public jury
22 trial.  You would have a right to be represented by
23 counsel.  If you cannot afford a lawyer, we would appoint
24 one to represent you.
25     At trial, you have the presumption of innocence,

1  which means you don't to prove or disprove anything.  The
2  government would have to prove the case against you beyond
3  a reasonable doubt.
4      You would have the right to be free from
5  self-incrimination, which means you have the right not to
6  testify.  And you have the right not to call witnesses to
7  testify.  If you were to not testify or not call
8  witnesses, the jury can't hold that against you.  They
9  can't go back to the jury room and say, hey, Mr. Pierson
10 didn't testify.  He must be hiding something.  That's not
11 the way the system works.  The jury would have to make its
12 decision based on the evidence that the government puts in
13 the record.
14     Now, to prove its case, the government will call its
15 witnesses who just come in here and testify.  And you
16 would have the right to confront those witnesses.  And the
17 way you would do that is, Ms. Depper would cross-examine
18 those witnesses and make sure that those witnesses'
19 testimony is truthful and accurate.
20     Also, the government in this case would probably have
21 quite a bit of physical evidence like photos and documents
22 and different things like that that it would want to put
23 in the record.  You have the right to object to those
24 documents and items coming into the record, and then I
25 have to decide whether they come in.

1    Once the government puts on its case, then you have a
2 right, if you want to, to call witnesses to testify for
3 you or to take the witness stand and tell the jury what
4 happened. You're not required to. But if you choose to,
5 you can. Just understand that, if you testify or if you
6 call witnesses to testify, then the government will have
7 the right to cross-examine you and your witnesses.
8    Also, if you have other physical evidence that you
9 want to put in the record, you have the right to offer it.
10 The government has a right to object to it. And then I
11 would have to determine whether those items come into
12 evidence.
13    Once all of the evidence is in, the jury will go back
14 to the jury room and discuss the case and determine if the
15 government proved the case against you beyond a reasonable
16 doubt. If that -- and the jury has to be unanimous. So
17 all 12 have to agree on the verdict. It's not a majority
18 vote.
19    If all 12 of those jurors determine that the
20 government did prove the case against you beyond a
21 reasonable doubt, the jury will find you guilty. If all
22 12 of those jurors determine that the government did not
23 prove the case against you beyond a reasonable doubt, the
24 jury will find you not guilty.
25    If you're found not guilty, your case is over, Mr.

1  Pierson, and the government cannot bring this case against
2  you again based on these facts.  If you are found guilty,
3  then you have a right to an appeal.
4       Now in this court -- appeals from this court to go
5  the Eighth Circuit Court of Appeals that sits in
6  St. Louis.  You would have three judges who would not hear
7  new evidence.  So they won't hear witnesses or anything
8  like that, any testimony.
9       What they will do is, they'll read the transcript of
10 the trial.  See the court reporter typing everything.  She
11 would do the same thing at trial.  And then your lawyer
12 would file a brief with the Court of Appeals arguing all
13 of the mistakes that I made and pointing them out and
14 telling the Court of Appeals that you lost because of the
15 mistakes I made in your trial.
16      So Ms. Depper would probably argue that either I let
17 evidence in I shouldn't have let in, I didn't keep -- I
18 let the government put on certain evidence that they
19 shouldn't have been allowed to put on, that type of thing.
20 And then the government will -- and she would argue that
21 the reason you lost your case is because I made those
22 decisions.
23      The government would then file a brief to the Court
24 of Appeals explaining that either I didn't make mistakes
25 in arguing its position on the rulings I made -- or would

1  argue that, well, he might have made some mistakes, but it
2  wasn't the mistakes that caused Mr. Pierson to lose his
3  case; it was all the properly admitted evidence that came
4  into the record that the jury had enough evidence anyway
5  to convict him.
6  　　　　Then what the Court of Appeals does, it reads those
7  briefs, looks at the transcript, and then determines why
8  did Mr. Pierson lose.  Did he lose because Judge Miller
9  made mistakes or did he lose because of the properly
10 admitted evidence.  If the Court of Appeals determines
11 that you lost because of the mistakes I made, they'll
12 reverse the jury's verdict, send the case back down here,
13 and we would try your case again.
14 　　　　The opinion the Court of Appeals issues, I'd use it
15 as a guide.  So if there was evidence I should have kept
16 out that I didn't, second time around I would.
17 　　　　Now, if the Court of Appeals determines that I did
18 not make mistakes that caused you to lose, it will affirm
19 the jury's verdict and your case will be over.
20 　　　　Do you understand that?
21 　　　　　　　THE DEFENDANT:  Yes.
22 　　　　　　　THE COURT:  You understand that by entering this
23 plea of guilty, you're giving up all of those rights; we
24 won't have a trial and I'll just enter a judgment of guilt
25 based on the plea you enter here today?  Do you

1  understand?
2          THE DEFENDANT:  Yes.
3          THE COURT:  Okay.  Now, have you had a chance to
4  talk to Ms. Depper about the possible sentence you could
5  receive?
6          THE DEFENDANT:  Yes.
7          THE COURT:  I can't tell you what your sentence
8  is going to be, Mr. Pierson, because I don't know.  I
9  won't even know what your sentencing guidelines range is
10 until the probation department goes out and performs a
11 presentence investigation.  What I can tell you is that,
12 based on the law -- and in the federal system we have our
13 law that tells me what the minimum and maximum sentences
14 are that I can give you.  I have to give you a sentence
15 within the range provided by the law.  In addition, to the
16 law, we have sentencing guidelines that help me determine
17 what an appropriate sentence is.  Although I have to
18 calculate the guidelines, I am not required to give you a
19 sentence within the range provided by the guidelines.
20      Do you understand that?
21         THE DEFENDANT:  Yes.
22         THE COURT:  So with regard -- and like I said, I
23 don't know what your guidelines range is right now, but
24 what I do know is that, based on the law, the range of
25 punishment for conspiracy to violate the Arms Control Act

1  is from zero to 20 years of imprisonment, a fine of up to
2  $250,000, not more than three years of supervised release,
3  and a $100 special assessment.
4      Do you understand that?
5          THE DEFENDANT:  Yes.
6          THE COURT:  Do you understand that, if I were to
7  give you a sentence longer than what you expect, you can't
8  withdraw your plea of guilty?
9          THE DEFENDANT:  Yes.
10         THE COURT:  Usually when I tell people that,
11 they get a little scared hearing that I can give you more
12 than what you expect.  But at the same time, if I give the
13 -- give you a sentence shorter than what the government
14 expects, it can't come in here and take the deal off the
15 table either.  Today locks you in.
16     Do you understand both sides?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Okay.  Do you understand that we
19 don't have parole in the federal system.  So if I do give
20 you prison time, you won't go before a parole board and
21 get out early?  Do you understand that?
22         THE DEFENDANT:  Yes.
23         THE COURT:  Now, I understand there is a plea
24 agreement.  Ms. Gardner, would you state for the record
25 what the terms of the agreement are?

1           MS. GARDNER:  Your Honor, this is a conditional
2  plea under which Mr. Pierson will plead guilty to Count 2
3  of the Fourth Superseding Indictment that charges
4  conspiracy to violate the Arms Export Control Act.
5       Under the waiver section, Your Honor, he waives all
6  appeals except that he reserves his right to appeal the
7  order denying his motions to dismiss, which are documents
8  184 and 224, and the order denying his motion to suppress,
9  which is document 185, as well as claims of prosecutorial
10 misconduct, and he reserves the right to appeal if his
11 sentence is above the guideline range.
12      Under the stipulation section, the parties agree that
13 the base offense level is calculated under the guidelines
14 Section 2M5.2(a)(1).  And that gives a base offense level
15 of 26.  Mr. Pierson will receive a two-level enhancement
16 for leadership role.  He's eligible for a two-level
17 reduction for acceptance of responsibility unless he takes
18 any actions between the entry of the guilty plea and
19 sentencing that's inconsistent with acceptance.  The
20 United States will make a determination on awarding the
21 third-level reduction at the time of sentencing.
22      With the exception of a leadership role that's
23 described in Paragraph 5B of the plea agreement, the
24 parties agree to litigate the application of any
25 enhancements or reduction under the guidelines at the time

```
1   of sentencing.
2          Paragraph 5E, Your Honor, states a factual basis for
3   the plea, has several paragraphs going on to Page 7.
4             THE COURT:  Okay.  Ms. Depper, are there any
5   other terms you want to put on the record?
6             MS. DEPPER:  No, Your Honor.
7             THE COURT:  Mr. Pierson, did you listen to the
8   statement given by the US attorney?
9             THE DEFENDANT:  Yes.
10            THE COURT:  Were those terms that she just
11  outlined were the terms you understood were contained in
12  your plea agreement?
13            THE DEFENDANT:  Yes.
14            THE COURT:  You understand that your agreement
15  is an agreement between you and the government and I'm not
16  ultimately bound by it?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Now, having discussed all of your
19  rights with you, do you still want to enter a plea of
20  guilty?
21            THE DEFENDANT:  Yes.
22            THE COURT:  Have any threats or promises been
23  made to you to get you to plead guilty?
24            THE DEFENDANT:  No.
25            THE COURT:  Are you pleading guilty voluntarily?
```

1      THE DEFENDANT:  Yes.
2      THE COURT:  And Ms. Gardner, would you state for
3  the record what facts you would put on if we were to have
4  a trial on Count 2 of the Fourth Superseding Indictment?
5      MS. GARDNER:  Your Honor, in the plea agreement
6  there are several paragraphs that set out the factual
7  basis.  I don't know if you want me to read those verbatim
8  or just kind of give a short summary.
9      THE COURT:  Give me a very brief summary.
10     MS. GARDNER:  Your Honor, beginning in or about
11 2014 and continuing into December of 2018, Mr. Pierson
12 used the Internet to order various different firearm
13 parts.  These parts were listed on the USML, which is the
14 United States Munitions List.  They're prohibited from
15 being exported without specific license and approval from
16 the State Department.  We specifically charged AR-15 80
17 percent lower receivers that were ordered in May of 2017.
18 And they -- excuse me.  They were to be delivered into
19 Arkansas for cerakoting.  They were discovered to be
20 counterfeit at that time and received by the United States
21 government.
22     However, the original agreement with Mr. Pierson and
23 the individual doing the cerakoting is that those firearms
24 would be shipped to Laredo, Texas, and thereafter the
25 conspiracy would take those into Mexico.

```
1        So those are the firearm parts that are at issue in
2   the Eastern District of Arkansas.
3             THE COURT:  Mr. Pierson, did you listen to the
4   statement given by the US attorney?
5             THE DEFENDANT:  Yes.
6             THE COURT:  Was her statement accurate?
7             THE DEFENDANT:  Yes.
8             THE COURT:  Okay.  Do you understand the nature
9   of the charge against you and the maximum penalties you
10  face?
11            THE DEFENDANT:  Yes.
12            THE COURT:  And how do you plead to Count 2 of
13  the July 6, 2021, Fourth Superseding Indictment?
14            THE DEFENDANT:  Guilty.
15            THE COURT:  Did you in fact commit the offense
16  as charged in Count 2?
17            THE DEFENDANT:  I didn't hear you.
18            THE COURT:  Did you in fact commit the offense
19  as charged in Count 2 of that Fourth Superseding
20  Indictment?
21            THE DEFENDANT:  Yes.
22            THE COURT:  Okay.  Ms. Depper, do you know of
23  any reason why I should not accept the guilty plea?
24            MS. DEPPER:  I do not, Your Honor.
25            THE COURT:  I find that the offense as charged
```

1  in Count 2 of the July 6, 2021, Fourth Superseding
2  Indictment was committed by the defendant Andrew Scott
3  Pierson.  I also find that Mr. Pierson is entering his
4  plea of guilty voluntarily with full knowledge of his
5  rights and the facts and the consequences that he faces.
6  And for those reasons, I accept the guilty plea.
7       Does the government move to dismiss the remaining
8  counts against Mr. Pierson?
9           MS. GARDNER:  Yes, Your Honor.  We move to
10 dismiss all the underlying charging instruments, including
11 the indictment, superseding indictment, first, second, and
12 third superseding indictments, and the remaining counts of
13 the Fourth Superseding Indictment.
14          THE COURT:  That's granted.
15      All right.  Mr. Pierson, what will happen at this
16 point is probation will go out and perform its presentence
17 investigation and look into your -- they'll look into your
18 background and they'll prepare a document that will have
19 family history, work history, employment history, drug and
20 alcohol history, criminal history, mental history, pretty
21 much everything in it, and they'll issue this report.  And
22 a copy will go to Ms. Depper and she'll share it with you.
23      What I ask you to do is look at it very closely, make
24 sure that the information in that report is accurate
25 because, ultimately, that will be the information I use to

determine what an appropriate sentence is for you. If there is anything in that report that's not accurate, let Ms. Depper know. She'll file an objection. Typically, those objections can be worked out with probation, but every now and again they can't work them out and we have to have a hearing. Once we have a hearing and work it all out, I'll bring you in for sentencing. Okay?

THE DEFENDANT: Okay.

THE COURT: Is there anything else we need to take up on this case?

MS. GARDNER: Not for the government, Your Honor.

MS. DEPPER: No, Your Honor.

THE COURT: Let's recess.

(Proceedings adjourned at 12:32 p.m.)

\* \* \* \* \*

REPORTER'S CERTIFICATE

I, Valarie D. Flora, FCRR, TX-CSR, AR-CCR, certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

Dated this the 23rd day of May, 2022.

/s/ Valarie D. Flora, CCR

-------------------------

United States Court Reporter